IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

VEOLIA WATER NORTH
AMERICA OPERATING SERVICES
LLC, formerly known as
U.S. Filter Operating Services, Inc.,

   Plaintiff,

    v.

CITY OF ATLANTA,

   Defendant.

CIVIL ACTION FILE
NO. 1:06-CV-1457-TWT

ORDER

This is an action for breach of contract. It is before the Court on the Plaintiff's Motion for Partial Summary Judgment [Doc. 57] and the Defendant's Motion for Continuance [Doc. 73]. For the reasons set forth below, the Plaintiff's motion is DENIED and the Defendant's motion is GRANTED.

I. BACKGROUND

This case arises out of a contract dispute between Defendant City of Atlanta ("the City") and the Plaintiff, Veolia Water North America Operating Services, formerly known as U.S. Filter Operating Services, Inc. ("Veolia"). The contract concerned the Plaintiff's management and operation of the City's biosolid waste

services. In April 2001, the City issued a request for statement of qualifications/request for proposals ("RFP") for its Long-Term Biosolids Management Services. The work included the design and construction of capital improvements to the City's Water Reclamation Centers ("WRC's") as well as biosolids management and operation at the WRC's. The Plaintiff submitted a proposal, which included "the design and construction of a 100 dry ton per day ("DTPD") biosolids treatment facility that would generate not less that 90 percent Class-A beneficial reuse product and the use of a SEGHERS thermal drying process to treat the 100 tons of biosolids." (Am. Compl., ¶ 10.) The drying process would ultimately turn the waste into pellets that could be sold as fertilizer. The Plaintiff's proposal was accepted, and the City and the Plaintiff entered into a contract ("the Agreement") on or about August 1, 2002. This contract included the following project items and costs associated with those items:

| ITEM | AMOUNT |
|---|---|
| - 60 DTPD Pelletizer and Related Equipment, including Side-Stream Treatment Facilities at the RM Clayton WRC | |
| - 40 DTPD Pelletizer and Related Equipment, including Side-Stream Treatment Facilities at the Utoy Creek WRC | $19,739,760 |
| - Side-Stream Treatment Facilities at the South River WRC | $17,656,040 |
| - Side-Stream Treatment Facilities at Intrenchment Creek WRC | $ 2,075,520 |
| - Repair and Replacement Items at All Plants, per the City of Atlanta's RFP and USFilter's Technical Proposal | $   757,470 |
| - City of Atlanta Allowances for Digester Cleaning and General Repairs to Digesters | $ 8,997,210 |

$ 4,300,000                                                                                                          $53,529,000

**Total**

(Pl.'s Mot. for Part. Summ. J., Ex. C, at 4.)

The Plaintiff did not take over operations of the City's waste facilities until December 2002. Soon after assuming this responsibility, it discovered that the operational parameters at four of the facilities had dramatically changed since the initial RFP issued 18 months earlier. In addressing these changed conditions, Veolia incurred substantial additional start-up and repair costs beyond those anticipated in the Agreement. The parties also discovered that significant additional capital improvements were required to properly process the biosolids, such that the capital budget would be almost $65 million, rather than the originally projected budget of $54 million. In April 2003, the City directed the Plaintiff to suspend the development of the pelletization process and announced that it was requiring a series of workshops to address and define the scope of Veolia's work going forward. Specifically, these meetings were intended "to identify those value-added items in the contract that may be moved forward in the schedule; to identify value-added process improvements; and to identify value engineering opportunities." (Pl.'s Mot. for Part. Summ. J., Ex. B.)

In December 2003, after several months of meetings and negotiations, the parties proposed a Revised Project Scope ("the Re-Scope"), which would replace the

originally contemplated thermal pelletization process with other solutions. The Re-Scope included the following project items:

| ITEM | AMOUNT |
|---|---|
| - Dewatering System, Digestion System, Gas System and Material Handling Upgrades at the RM Clayton WRC | $7,368,793 |
| - Dewatering System, Digestion System, and Material Handling Upgrades at the Utoy Creek WRC | $4,995,833 |
| - Dewatering System and Digestion System Upgrades at the South River WRC | $2,570,027 |
| - Dewatering System and Digestion System Upgrades at the Intrenchment Creek WRC | $1,431,268 |
| - #1 Thermal Processor Upgrade at Utoy Creek WRC | $5,184,086 |
| - City of Atlanta Allowance for Digester Cleaning and General Repairs to Digesters | $4,300,000 |
| - Additional Allowances for Design Enhancement and Sludge Receiving Facilities | $2,155,000 |
| - Cost for Year 1 Operational Requirements, Pre-Design Work and Subcontractor Management Program | $5,694,506 |
| **Total** | $33,699,513 |

(Pl.'s Mot. for Part. Summ. J., Ex. C., at 8.) Thus, although the Re-Scope included some carry-overs from the original project, it contained new design/build projects that superseded the pelletization projects contained in the original scope. According to the Defendant, the parties operated for almost a year under the terms of this Re-Scope and the Plaintiff received payments for its work in accordance with the new terms. The City and Veolia never amended the Agreement, however, to reflect these changes.

The City contends that Veolia failed to perform as required under the Agreement, resulting in Veolia defaulting on its responsibilities under the contract.

Veolia responded by sending notice of its intent to terminate the Agreement and file suit. The City then terminated the Agreement on July 10, 2006. The Plaintiff filed this lawsuit on June 19, 2006, alleging that the City had breached the Agreement. The Plaintiff now moves for partial summary judgment, asking this Court to find that because the Agreement was never properly modified in accordance with applicable municipal law or with the contract's own terms, the Re-Scope is inapplicable to the present action. The Defendant has moved for a continuance, requesting that this Court postpone consideration of this motion until after discovery has been completed.

## II. DISCUSSION

### A. Motion for Continuance

The Defendant seeks to avoid a ruling on the Plaintiff's summary judgment motion, arguing that because the parties have not had the opportunity to complete discovery, it cannot produce evidence to explain why the motion is ill-founded. It has filed a motion for a continuance pursuant to Rule 56(f) of the Federal Rules of Civil Procedure. As explained by the Eleventh Circuit:

> A party seeking the shelter of rule 56(f) must offer an affidavit explaining to the court why he is unable to make a substantive response as is required by subsection (e)....the nonmovant "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts," but rather he must specifically demonstrate "'how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.'"

Wallace v. Brownell Pontiac-GMC Co., Inc., 703 F.2d 525, 527 (11th Cir. 1983) (citations and punctuation omitted).  Generally, "summary judgment should not be granted until the party opposing the motion has had an adequate opportunity to conduct discovery."  Reflectone, Inc. v. Farrand Optical Co., Inc., 862 F.2d 841, 843 (11th Cir. 1989).

Here, the Defendant, through its affidavit, contends that discovery will demonstrate that: (1) "Veolia waived any requirement in the Agreement that the changes reflected in the Re-Scope be made only in writing"; (2) "to the extent the City has not formally approved the changes to the Agreement reflected in the Re-Scope, the City has ratified those changes"; and (3) "to the extent the City has not formally approved the changes to the Agreement reflected in the Re-Scope, Veolia should be estopped to deny that it is bound by those changes."  (William Sheppard Aff., ¶ 6.)  In its reply brief, the Defendant additionally argues that it complied with the terms of the Agreement by issuing a Construction Change Directive ("CCD") pursuant to Section 12.10.[1]

---

[1] Because this specific reason for granting the continuance was not listed in the Defendant's motion for continuance or the corresponding affidavit, the Court granted the Plaintiff leave to respond.  See International Telecommunications Exchange Corp. v. MCI Telecommunications Corp., 892 F. Supp. 1520, 1531 (N.D. Ga. 1995) ("Normally, a party may not raise new grounds for granting its motion in a reply. Where a party does raise new grounds in its reply, the Court may either strike the new grounds or permit the non-moving party additional time to respond to the new

The Defendant's position, in essence, is that discovery will show either that the Re-Scope was a CCD and thus permitted under the Agreement, or alternatively, that even if the Re-Scope was not added in compliance with the contract, the parties' conduct made it valid after the fact. The Plaintiff claims, however, that "additional discovery will not affect any of the[se] issues because each is governed by the unambiguous language of the Agreement and is a question of law for the Court." (Pl.'s Resp. to Mot. for Cont., at 2.)

The Defendant contends that, even if the changes were not permitted under the terms of the Agreement, the Re-Scope was validated by the conduct of the parties. Specifically, the City argues that discovery will show that the parties waived the requirement that any changes be made in writing, the City ratified the changes to the Agreement, and Veolia should be estopped from denying the application of the Re-Scope because it operated under the new terms and received benefits therefrom. The Court need only address the estoppel claim to rule on this motion.

As summarized by the former Fifth Circuit, "[e]quitable estoppel is an established principle of Georgia law and arises where a party has so acted that he has by his conduct either gained some advantage for himself or caused some disadvantage

---

argument."). The Plaintiff filed a supplemental memorandum in opposition to the Defendant's motion for continuance on February 7, 2007.

to another by reason of which it would be contrary to equity and good conscience to permit him to allege and prove the truth." Levy v. Empire Ins. Co., 379 F.2d 860, 862 (5th Cir. 1967) (citing Goodwyn v. Goodwyn, 20 Ga. 600 (1856) and Cloud v. Bagwell, 83 Ga. App. 769, 64 S.E.2d 921 (1951)); see also Shumate v. Dugan, 934 S.W.2d 589, 594 (Mo. Ct. App. 1996) ("In an equitable estoppel, or estoppel in pais, there exists a condition in which justice forbids that one speak the truth in his own behalf."); Wallace v. McKinzie, 869 S.W.2d 592, 595 (Tex. Ct. App. 1993) (same); Federal Finance Co. v. Humiston, 404 P.2d 465, 468 (Wash. 1965) (same). To prove an estoppel claim, "it is incumbent upon the complainant to show not only that his act was performed in pursuance of and on the faith of the contract, but that it was accepted by the other party in accordance therewith, mutuality of action or its equitable equivalent being an essential ingredient of the cause of action." Hendricks v. Enterprise Financial Corp., 199 Ga. App. 577, 579-80 (1991).

The City contends that discovery is required to determine whether the Plaintiff should be estopped from bringing this claim because Veolia operated under the terms of the Re-Scope for two years and "received lump sum payments and increased monthly operation and maintenance payments from the City." (Def.'s Reply to Resp. to Mot. for Cont., at 13.) The Plaintiff claims, however, that the Agreement itself prohibits the City from bringing an estoppel argument because Sections 20.10 and

20.11 provide that the contract can only be modified in writing and that neither parties' conduct can change the terms of the Agreement.[2]  As support for this contention, Veolia cites Hendricks, 199 Ga. App. at 577.  There, the defendant made an estoppel argument against a lender attempting to enforce against him a personal loan guarantee he had made for his family's company.  He contended that he had left the company some time prior to the loan enforcement proceeding and, at the time of his departure, had transferred his stock and drafted a letter stating that this action was being taken in exchange for the release of his guarantee on the loan.  The officers for the lender never discussed the letter with the defendant or specifically stated that its terms were acceptable.  When an action was brought to enforce the guarantee, however, the defendant claimed that the lender should be estopped from seeking payment from him because the lending officers' course of conduct demonstrated that

---

[2]Specifically, Section 20.10 states that:

> No action of the City or the Contractor pursuant to this Agreement (including, but not limited to, any investigation or payment), and no failure to act, shall constitute a waiver by either Party of the other Party's compliance with any term or provision of this Agreement.  No course of dealing or delay by the City or the Contractor in exercising any right, power or remedy under this Agreement shall operate as a waiver thereof or otherwise prejudice such Party's rights, powers and remedies.

Section 20.11 then establishes that the Agreement cannot be modified except in writing.

he had been released from liability. The Georgia Court of Appeals found that, under the circumstances, the defendant could not have reasonably relied upon the actions of the lending officers because the guarantee agreement provided that "no course of dealing" would change or modify the guarantee. Id. at 580. Veolia thus contends that because the Agreement included a similar provision, the City could not have relied on the parties' conduct.

The Court is unpersuaded, however, that Hendricks supports resolution of the present dispute prior to discovery. First, Georgia's courts have stated that a contract can be changed through the parties' conduct even where the contract contains a "no waiver" clause or a written modification provision. See Glimcher Props., L.P. v. Bi-Lo, LLC, 271 Ga. App. 322, 324 (2005) ("[P]arties may modify a written agreement through their conduct, even when the contract itself contains a merger clause or a 'No Waiver' provision...") (citing Smith v. Gen. Finance Corp., 243 Ga. 500, 501 (1979)); see also Brookhaven Landscape & Grading Co., Inc. v. J. F. Barton Contracting Co., 676 F.2d 516, 522 (11th Cir. 1982) ("Under Georgia law, waiver of written modification requirements may be established through a course of conduct between the parties."). Furthermore, the Hendricks court makes clear that estoppel is usually an issue of fact that can only be resolved "through the vehicle of summary judgment where, as here, plain, palpable, and undisputed evidence shows that an

estoppel has not occurred." Id. at 580.  Specifically, the court reasoned that "nothing the officers said or did, as reflected in this record, reasonably could have generated a subsequent detrimental reliance or would otherwise have given rise to such inducement on the part of [Hendricks]." Id. (emphasis added).  The decision in that case was thus made after discovery on a full evidentiary record.  No such record exists here.  The Plaintiff has identified no case in Georgia, moreover, in which the court reached its determination prior to the completion of discovery on this issue.  See American Car Rentals, Inc. v. Walden Leasing, Inc., 220 Ga. App. 314, 316 (1996) ("Although parties can modify their agreement through their course of conduct and regular business practices, American has failed to prove that occurred here."); Trust Co. of Georgia v. Montgomery, 136 Ga. App. 742 (1975) (reaching conclusions as to the applicability of the contract's "no waiver" and written modification provisions after a bench trial).  The Court accordingly finds this issue inappropriate for resolution at this time and grants the Defendant's motion for continuance.

    B. Motion for Summary Judgment

Because the Court has determined that the Defendant has presented evidence sufficient to merit a continuance under Rule 56(f), the Plaintiff's motion for partial summary judgment is dismissed without prejudice.  This motion can be refiled after discovery is complete.

## III. CONCLUSION

For the reasons set forth above, the Plaintiff's Motion for Partial Summary Judgment [Doc. 57] is DENIED, and the Defendant's Motion for Continuance [Doc. 73] is GRANTED. The Plaintiff's motion is dismissed without prejudice.

SO ORDERED, this 22 day of February, 2007.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge