IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

VEOLIA WATER NORTH
AMERICA OPERATING SERVICES
LLC, formerly known as
U.S. Filter Operating Services, Inc.,

   Plaintiff,

     v.

CITY OF ATLANTA,

   Defendant.

CIVIL ACTION FILE
NO. 1:06-CV-1457-TWT

OPINION AND ORDER

This is an action for breach of contract. It is before the Court on the Defendant's Motion for Attorney Fees and Expenses [Doc. 238]; the Defendant's Motion to Alter the Clerk's Judgment [Doc. 239]; the Plaintiff's Motion for Reconsideration of the Clerk's Judgment [Doc. 241]; the Plaintiff's Motion for Oral Argument [Doc. 240]; and the Plaintiff's Motion to Certify for Interlocutory Appeal [Doc. 242]. For the reasons set forth below, the Defendant's Motion for Attorney Fees and Expenses [Doc. 238] is DENIED as premature; the Defendant's Motion to Alter the Clerk's Judgment [Doc. 239] is GRANTED; the Plaintiff's Motion for Reconsideration of the Clerk's Judgment [Doc. 241] is GRANTED IN PART and

DENIED IN PART; the Plaintiff's Motion for Oral Argument [Doc. 240] is DENIED; and the Plaintiff's Motion to Certify for Interlocutory Appeal [Doc. 242] is DENIED.[1]

I. Introduction

This case arises out of a contract dispute between Defendant City of Atlanta ("the City") and the Plaintiff, Veolia Water North America Operating Services, formerly known as U.S. Filter Operating Services, Inc. ("Veolia"), relating to the operation of the City's Water Reclamation Centers. The parties filed cross motions for summary judgment. The Plaintiff's Motion was a partial one, seeking a finding that the Re-Scope was never properly adopted, which meant that the original Agreement was abandoned, and the Plaintiff was therefore entitled to recover under a theory of quantum meruit. The Defendant's Motion – not styled as a partial one – argued that the Plaintiff could not "prevail on its quantum meruit claims under any of the theories advanced and that most of Veolia's breach of contract claims are barred by the specific contract provisions." (Def.'s Mot. for Summ. J., at 1). More specifically, the City sought summary judgment "for each of the claims enumerated in subparagraphs 18(a)–(d) and 39(a)–(m) of Veolia's Second Amended Complaint" for failure to satisfy the notice provision in the contract. (Def.'s Mot. for Summ. J.,

---

[1] This Opinion and Order is also applicable in the case of <u>City of Atlanta v. Veolia Environment, S.A.</u>, Civil Action No. 06-CV-1457-TWT. Veolia is referred to as the Plaintiff and the City as the Defendant merely for convenience.

at 64). This portion of the Complaint included claims for "[f]ailure to provide for an equitable adjustment to the Agreement for the suspension," any "additional operational costs associated with the suspension," and "[f]ailure to pay Veolia on a cost plus basis as required under the Agreement due to the suspension." (Second Amended Compl. ¶¶ 39(b), 39(l)). Neither of the motions addressed the City's counterclaims, except to the extent that the City was entitled to money had and received in the event the Court found the Re-Scope invalid.

The Court issued an Order on December 8, 2008, which denied the Plaintiff's Motion for Partial Summary Judgment and granted the City's cross Motion for Summary Judgment. [Doc. 236]. The Order was largely grounded in the fact that the Plaintiff failed to present evidence that it complied with the formal notice requirements of the Contract, and that this failure to notify prejudiced the City.[2] The Clerk then entered judgment in favor of the City and closed the case.

---

[2]Section 20.07 of the Agreement states: "No claim by the Contractor against the City for additional compensation . . . shall be valid unless a notice of claim is filed with the City within ten (10) days after occurrence of the event upon which the claim is based, and, in addition, unless a detailed written statement of the claim, accompanied by [documentation], shall have been filed with the City by the Contractor within thirty (30) days after the occurrence of said event."

## II. Motion For Reconsideration

Under Local Rule 7.2(E), "motions for reconsideration should not be filed as a matter of routine practice" but only when "absolutely necessary." A motion for reconsideration should be granted only if there is newly-discovered evidence or manifest errors of law or fact. In re Kellogg, 197 F.3d 1116, 1119 (11th Cir. 1999). Because motions to reconsider or to alter or amend judgments should be granted sparingly, a court should be hesitant to allow parties to "relitigate old matters or preset the case under a new legal theory [or] give the moving party another 'bite at the apple' by permitting the arguing of issues" that should have been raised earlier. Mincey v. Head, 206 F.3d 1106, 1137 n.69 (11th Cir. 2000). I address each of the Plaintiff's arguments in turn.

### A. Re-Scope Finality and Notice of Claims

The Plaintiff asks the Court to reconsider its Order in light of facts that suggest that the City was unsure whether or not the Re-Scope was a final agreement. As a general matter, the Court's Order found this to be immaterial as the parties worked under the Re-Scoped values for nearly two years. The Plaintiff argues that evidence of the lack of a final agreement is that one of its proposals sought to remove the "as-is" provision of the Agreement. The Plaintiff does not allege that the City accepted this proposal. The fact that the Plaintiff proposed changes is of no consequence. The

parties performed under the Re-Scope for many months. The Plaintiff accepted increased operation and maintenance fees and a lump sum payment and proceeded under a drastically reworked capital expenditure framework.

Similarly, the Plaintiff argues that the City waived its claims procedure until the Re-Scope negotiations were completed in August 2005. Because the parties had been working under the Re-Scoped values for nearly two years, there was no abandonment of the contract and the claims provisions stand. The Plaintiff's position is a precarious one. It also relies on the Agreement in seeking damages for the City's allegedly improper draw down of the Letter of Credit. The Plaintiff seeks to justify its reliance on the Agreement by noting that the "the 'as is' provision of the Agreement has nothing to do with whether the City properly called the Letter of Credit, which can only be collected when Veolia is in material breach and the amount drawn constitutes a good faith assessment of damages." (Pl.'s Mot. for Reconsideration, at 15). The distinction is not persuasive - either the Agreement was entirely abandoned (or cardinally changed) or it was not. Because of this argument, the Plaintiff should be judicially estopped from claiming the Agreement was abandoned or cardinally changed.

The Plaintiff suggests that the Court improperly dismissed its damages claims because the Plaintiff notified the City of potential claims on multiple occasions. First,

the City agreed to compensate for operation and maintenance losses in December 2003 as part of the Re-Scope. As the Plaintiff acknowledges, it failed to provide notice of claims again until June 2005. The Plaintiff now contends that "a disputed fact question at the heart of the lawsuit" is the question of whether the Re-Scope's lump sum and increased operation and maintenance values in the Re-Scope made the Plaintiff whole. That does not matter. The Plaintiff cannot accept an equitable adjustment and later sue for breach of contract because it should have gotten more. Notification of claims proved essential as the Plaintiff sought to nearly double the capital scope of the project in October 2005 and now seeks over $24 million in damages in this lawsuit. Due to the opportunity for such substantial prejudice to the City, the Plaintiff had a contractual obligation to formally notify the City in a timely fashion even if the problems were continual in nature. By the time the Plaintiff finally notified the City of more potential claims, it was simply too late.

  B. <u>Breach of Contract Claims Not Specifically Discussed in Order</u>

Next, the Plaintiff argues that the Court improperly dismissed certain elements of its contract claim because they were not in dispute in the City's Motion for Summary Judgment. The City does not dispute that certain claims are viable. Specifically, the Defendant concedes that the Plaintiff is entitled to offsets in the amount of $10,791,409.70, consisting of: (1) an unpaid invoice totaling $268,966.63

for services performed from June 1 - June 30, 2006; (2) an unpaid invoice totaling $84,269.97 for services performed July 1 - July 9, 2006; (3) withheld retainage amounts totaling $912,869.20; and (4) the calling of the Plaintiff's letter of credit totaling $9,525,304. (Def.'s Br. in Opp'n to Pl.'s Mot. for Reconsideration, at 15). These claims should be reinstated.

The Plaintiff also argues that a wrongful termination claim should be resurrected. The Court notes as an initial matter that the Defendant's Motion for Summary Judgment was not styled as a partial one, and nowhere in its 75 page opposition brief did the Plaintiff mention the wrongful termination claim (or letter of credit or unpaid invoices). The Plaintiff also admits that it never formally pled a wrongful termination claim in its Complaint, but did list it in its disclosures. Accordingly, the Plaintiff argues that the disclosures served to "codify what is set forth in the Complaint." (Pl.'s Mot. for Reconsideration, at 20-21). The Court will not reinstate the wrongful termination claim because: (1) the Plaintiff never formally plead it the Complaint; (2) even if it "codified" the elements pled in the Complaint in its intimal disclosures, the Plaintiff waived the wrongful termination claim; and (3) the City contests its reinstatement now.

Additionally, the Plaintiff argues that the City did not move for summary judgment on "claims related to the suspension of the agreement." (Pl.'s Mot. for

Reconsideration, at 16). These claims include a "failure to provide for an equitable adjustment to the Agreement for the suspension of the Design Build Improvements" and the failure to pay the Plaintiff on a cost plus basis since it was operating under a suspension. (Id.) The City did move for summary judgment on these claims, which are set forth in ¶ 39 of the Plaintiff's Second Amended Complaint. (Def.'s Mot. for Summ. J., at 64) ("As a start, Veolia should provide that evidence of compliance with Section 20.07 for each of the claims enumerated in subparagraphs 18(a)-(d) and 39(a)-(m) of Veolia's Second Amended Complaint. Only those claims that meet those requirements may go on to trial. On all other claims, the City is entitled to summary judgment as a matter of law."). The City clearly moved for summary judgment on these claims and the Plaintiff waived any argument to the contrary. The Plaintiff also urges the Court to reconsider its claims based on suspensions of the Agreement. The Plaintiff argues that § 12.04(G) of the Agreement exempts notice of claims for equitable adjustments based on construction until within ten days of the termination of any suspension. (Pl.'s Mot. for Partial Summ. J., Ex. E, § 12.04(G)(2)). As the Plaintiff notes, the City issued three suspension letters that ran through April 14, 2005. Because the Plaintiff did not argue that § 12.04 excused notice required by other notice provisions in the Agreement, this argument should be deemed waived. Mincey v. Head, 206 F.3d 1106, 1137 n.69 (11th Cir. 2000).

### III. Motion to Alter Judgment

The City seeks to alter the judgment pursuant to Rule 59(e) to the extent that its counterclaims were dismissed. The parties briefed the Court on the City's counterclaim for money had and received in the event that the Re-Scope was found to be invalid. (Def.'s Mot. for Summ. J., at 28-30). Because the Court found that the Re-Scope was valid as the parties performed under it for a significant period of time, any counterclaims relying on this theory are moot. Otherwise, there was no discussion in the briefs of the City's counterclaims. But, the Plaintiff does not now contest the City's motion and it should be granted.

### IV. Motion to Certify Judgment for Interlocutory Appeal

The Plaintiff moves to certify the Order for interlocutory appeal under Rule 54(b). Rule 54(b) allows the Court to direct entry of a final judgment to some, but not necessarily all, claims if there is no just reason for delay. Finality entails the "ultimate disposition of an individual claim," and a judgment must be a "decision upon a cognizable claim for relief." Lloyd Noland Foundation, Inc. v. Tenet Health Care Corp., 483 F.3d 773, 777 (11th Cir. 2007). A district court should not certify an appeal carelessly; it must account for historic judicial administrative interests, including the strong federal preference against piecemeal appeals. Id. Although "the line between deciding one of several claims and deciding only part of a single claim is very

obscure," Lloyd Noland Foundation, 483 F.3d at 780, here, the parties have itemized and seemingly agreed upon the Plaintiff's remaining claims. Therefore, there is no danger of the remaining claims mutually excluding or substantially overlapping with the other remedies sought. Id. All that remains is a trial on those claims and the City's counterclaims. That should be done before this complicated and messy case goes to the Court of Appeals.

## V. Plaintiff's Request for Oral Argument

The parties have briefed the Court extensively on the facts and legal issues in this case. The Court will decline the request for oral argument.

## VI. Defendant's Motion for Attorney Fees and Expenses

The City agreed its Motion was premature upon the Court's reopening of the case. (Reply Br. in Supp. of Def.'s Mot. for Attorney Fees, at 2). It is therefore premature.

## VII. Conclusion

For the reasons set forth above, the Defendant's Motion for Attorney Fees and Expenses [Doc. 238] is DENIED as premature; the Defendant's Motion to Alter the Clerk's Judgment [Doc. 239] is GRANTED; the Plaintiff's Motion for Reconsideration of the Clerk's Judgment [Doc. 241] is GRANTED IN PART and DENIED IN PART; the Plaintiff's Motion for Oral Argument [Doc. 240] is DENIED;

and the Plaintiff's Motion to Certify for Interlocutory Appeal [Doc. 242] is DENIED.

The judgment previously entered in this case is vacated.

SO ORDERED, this 14 day of July, 2009.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge