IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

VEOLIA WATER NORTH
AMERICA OPERATING SERVICES
LLC, formerly known as
U.S. Filter Operating Services, Inc.,

    Plaintiff,

      v.

                        CIVIL ACTION FILE
                        NO. 1:06-CV-1457-TWT

CITY OF ATLANTA,

    Defendant.

OPINION AND ORDER

This is an action for breach of contract.  It is before the Court on the Plaintiff's Motion to Alter Clerk's Judgment [Doc. 382] and the Defendant's Motion to Alter Clerk's Judgment [Doc. 381].  For the reasons listed below, the Plaintiff's Motion to Alter Clerk's Judgment [Doc. 382] is GRANTED in part and DENIED in part, and the Defendant's Motion to Alter Judgment [Doc. 381] is DENIED.

## I.  Introduction

This case arises out of a contract dispute between the City of Atlanta and Veolia Water North America Operating Services relating to the operation of the City's water reclamation centers.  Pursuant to Federal Rule of Civil Procedure 52, the Court

entered findings of fact and conclusions of law following a non-jury trial conducted from October 4 to October 18, 2010.  The parties now move to amend the judgment under Federal Rules of Civil Procedure 52(b), 59(a), and 60(a).

## II.  Standard

Federal Rule of Civil Procedure 52(b) permits a court that entered findings of fact and conclusions of law following a non-jury trial to "amend its findings - or make additional findings - and . . . amend the judgment accordingly."  Similarly, Rule 59(a)(2) permits the court to "open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment."  Finally, Rule 60(a) permits the court to correct a mistake in a judgment or order arising from an oversight or omission.  Veolia has identified a relatively minor mathematical error in the calculation of its damages.  Otherwise, both parties are actually asking for reconsideration of the Court's previous Opinion and Order in this case.

## III.  Discussion

The City moves to amend the amount of damages awarded for natural gas offsets and attorney's fees.  Veolia moves to amend the amount of damages awarded for belt press rental fees, odor control chemical costs, digester lid repair costs, and prejudgment interest.  The Court addresses each category of damages in turn.

A.   <u>Natural Gas Offsets</u>

The Service Agreement provided that the City would pay for Veolia's natural gas usage up to a "guaranteed utility usage rate."  If Veolia used more than the guaranteed utility usage rate, it would pay for the extra.  If Veolia used less than the guaranteed utility usage rate, the City and Veolia would split the savings.  (Joint Ex. 20 § 11.06.)  The Service Agreement listed the guaranteed utility usage rate as .7 decatherms ("dT") per dry weight ton.  Shortly after it began operations, Veolia told the City that the .7 dT rate reflected a unit conversion error and that the correct rate should be 7.0 dT.  The City ultimately agreed, and from April of 2004 until late 2005, it billed and paid Veolia using the 7.0 dT rate.  (Transcript at 1164-65.)  About eighteen months later, in October 2005, the City unilaterally switched back to the .7 dT usage rate.  (Transcript at 1166-67.)  From then until termination, the City deducted over $1 million from its payments to Veolia while using the .7 dT usage rate that it had previously acknowledged was a mistake. (City Ex. 475.)

The Court found that the City was not entitled to offset these charges and awarded Veolia $1,536,972.98.  At trial, this amount appeared to be undisputed.  Both parties acknowledged in their proposed findings of fact and conclusions of law that the City deducted a total of $1,536,972.98 from Veolia for excess natural gas costs. (City's Proposed Findings of Fact and Conclusions of Law ¶ 288; Veolia's Proposed

Findings of Fact and Conclusions of Law at 132; City Ex. 475 at 1) ("Summary of Amount of Miscalculated Natural Gas Payments to Veolia").  Now, the City says that it only deducted $1,032,051.00 for excess natural gas costs from October 2005, when it switched back to the .7 dT usage rate, to Veolia's termination.  The exhibit referenced by the City in support of its position is a spreadsheet that allocates its natural gas deductions across invoices dating back to December 2002.  But the spreadsheet shows that the City took some deductions between April 2004 and October 2005 (when it was supposedly using the 7.0 dT usage rate) even though Veolia used less than 7.0 dT per dry ton.  The City did not sufficiently explain at trial (or in its post-judgment motion) why these deductions were proper and should not be awarded to Veolia.  Accordingly, the City's request to amend the amount of damages awarded for natural gas offsets is denied.

B.    Attorney's Fees

The City also seeks to recover attorney's fees.  In the Pretrial Order, the City sought attorney's fees on two bases - O.C.G.A. § 13-6-11 and a guarantee agreement with Veolia's parent company.  The Court rejected both claims.  Now, the City seeks attorney's fees pursuant to § 16.01 of the Service Agreement. But it is too late to pursue a new theory of recovery.  See State Treasurer of State of Michigan v. Barry, 168 F.3d 8, 17 (11th Cir. 1999) ("The 'stubborn litigiousness' claim [to recover

attorney's fees] was not mentioned in the pretrial order, and was thus abandoned.").
Because the City did not raise its § 16.01 claim for attorney's fees until after the trial,
the claim is abandoned.

Even if the City's claim for attorney's fees under § 16.01 was not abandoned,
the City would not be entitled to recover under this provision.  Section 16.01, titled
"Indemnification," provides:

> (A) Obligation to Indemnify
> In addition to its obligation to obtain and maintain the Required
> Insurance, the Contractor shall protect, save, indemnify, defend and hold
> harmless the City . . . from and against (and pay the full amount of) any
> and all Loss-and-Expense [including attorney's fees] related to or arising
> from or in connection with (or alleged to be related to or to arise from or
> in connection with) (1) any failure by the Contractor to perform its
> obligations under this Agreement; (2) the negligence or willful
> misconduct of the Contractor or any of its officers, directors, employees,
> representatives, agents or SubContractors in connection with this
> Agreement; (3) Contractor Fault . . .

(Joint Ex. 20 § 16.01(A).)  Typically, the purpose of an indemnity clause is to
indemnify the indemnitee against liability from third-party claims.  In most states,
courts do not interpret indemnity clauses as permitting the recovery of attorney's fees
in a suit between the parties, even if the clause is theoretically broad enough to do so.
See, e.g., Hooper Associates, Ltd. v. AGS Computers, Inc., 74 N.Y.2d 487, 492 (N.Y.
1989) ("Inasmuch as a promise by one party to a contract to indemnify the other for
attorney's fees incurred in litigation between them is contrary to the well-understood

rule that parties are responsible for their own attorney's fees, the court should not infer a party's intention to waive the benefit of the rule unless the intention to do so is unmistakably clear from the language of the promise."); see also Philip L. Bruner & Patrick J. O'Connor, Jr., 3 Construction Law § 10:51 (2007) ("Most courts distinguish between the recovery of attorneys' fees incurred in defending against the third-party claim and those expended in prosecuting a claim against the indemnitor. Unless the indemnity provision expressly permits the recovery of fees incurred in prosecuting claims against the indemnitor, such fees are not recoverable.").   It appears that Georgia courts would adhere to the majority rule.   In SRG Consulting, Inc. v. Eagle Hospital Physicians, LLC, 282 Ga. App. 842, 845 (2006), the Georgia Court of Appeals, considering a similar clause, explained, "[T]he purpose of an indemnity clause in a contact is not to protect the parties to the contract from legal action by each other to enforce the contract."  Id. at 845; but see Wender & Roberts, Inc. v. Wender, 238 Ga. App. 355, 358 (1999).  Accordingly, the City is not permitted to recover attorney's fees from Veolia under § 16.01.

      C.      Belt Press Operating Fees and Odor Control Chemical Costs

              1.      Calculation of Damages

Veolia moves to amend the amount of damages awarded in connection with belt press rentals at RM Clayton.  The Court found that the collapse of the digester lids at

RM Clayton was caused by the manner in which Veolia operated the digesters.  It awarded the City $9,032,469.16 in fees paid for belt presses operated at RM Clayton after Veolia's termination as an alleged consequence of the lid failures.  Belt presses are an alternative method of sludge processing and disposal that do not use centrifuge dewatering or incineration.  Veolia says that the City avoided substantial costs by operating the belt presses "in lieu of the centrifuges and incinerators," and that the City's failure to deduct the avoided costs from its damages calculation bars any recovery on this claim.  But the evidence introduced at trial showed that the City used the belt presses to supplement - not replace - the centrifuges and incinerators in order to process the increased volume of sludge caused by the broken digesters. (Transcript at 885, 958, 1090.)  Although the City may have avoided some costs, Veolia failed to show that the avoided costs were significant and this did not prevent the Court from calculating the City's damages with reasonable certainty.

2.    Consequential Damages Cap

In the alternative, Veolia argues that the $9,032,469.16 award should be reduced to $2,000,000.00 pursuant to § 17.10 of the Service Agreement, which imposes a cap on consequential damages:

> [I]n no event shall the Contractor be liable to the City or obligated in any manner to pay to the City, except with respect to indemnification of Loss-and-Expenses arising from third party claims for which the Contractor is obligated to indemnify the City pursuant to the provisions

of this Agreement, any special, incidental, consequential, punitive, indirect or similar damages in excess of two million dollars ($2,000,000) based upon claims arising out of or in connection with the performance or non-performance of its obligations under this Agreement (including acts of negligence, omissions or strict liability), or the material falseness or inaccuracy of any representation made in this Agreement, whether such claims are based upon contract, tort, negligence, warranty or other legal theory.

In response, the City argues that Veolia is judicially estopped from invoking § 17.10 and that the belt press fees are not consequential damages anyway.

At trial, Veolia sought to recover the costs of using belt presses to draw down Digesters 150 and 250 in preparation for cleaning and repair.  According to the City, because Veolia previously sought to recover the costs of using belt presses, it "necessarily took the position that these damages were not consequential damages subject to Section 17.10."  (Def.'s Br. in Resp. to Pl.'s Mot. to Alter Clerk's J. at 14.) The City argues that this position is inconsistent with Veolia's assertion that the $9,032,469.16 in belt press operating fees at issue here are consequential damages subject to § 17.10.  The purpose of judicial estoppel is "to protect the integrity of the judicial process by prohibiting parties from changing positions according to the exigencies of the moment."  Robinson v. Tyson Foods, Inc., 595 F.3d 1269, 1273 (11th Cir. 2010).  Accordingly, to invoke judicial estoppel, any inconsistencies "must be shown to have been calculated to make a mockery of the judicial system."  Id. Here, Veolia knew at trial that the City was seeking damages in excess of the

limitation.  But it never invoked § 17.10 at any time during the trial.  It never referred to §17.10 in its proposed findings of fact and conclusions of law.  Waiver, estoppel, call it what you will, Veolia cannot lose on the merits of the claim and then invoke the damages limitation in a motion to amend judgment.

      D.     <u>Remaining Service Life on Digester Lids</u>

Veolia also moves to amend the amount of damages awarded for digester lid repair costs.  The City showed that the total cost of removing and replacing the digester lids was $6,249,602.00.  (City Ex. 381.)  But it did not seek the full amount.  For example, the City acknowledged that the lids would have needed to be replaced soon, and did not seek to recover the cost of labor associated with replacing the lids (estimated by the contractor at 50% of the total costs).  (Transcript at 950-951.)  In addition, the City adjusted the costs it sought to recover to account for the condition of the lids before they collapsed.  (Transcript at 951-953; City Ex. 381.)  To do so, it used the methodologies agreed to by the parties in the WASL provision of the original Service Agreement.  (Transcript at 943-944; City Ex. 375A1 at 15-52; Joint Ex. 30.)  Because the digester lids were beyond their expected useful service life at the time of the collapse, they were deemed to have a remaining useful life of 3.2 years (ten percent of the original estimated useful service life).  (City Ex. 375A1 at 26.)  The remaining useful service life was further adjusted based on the condition of the lids

at the time of their collapse.  The City estimated that the lids were in "Yellow" condition, which means that the lids were "generally in expected condition for [their] age" but had "issues or problems that [could] be corrected through specific maintenance activity."  Id. at 42.  That condition adjustment meant that the lids were deemed to have 85% of their remaining useful life, or 2.72 years.  Two point seventy-two years is 8.5% of the original expected useful life.  Accordingly, the City multiplied the direct cost of materials by .085 to calculate its total damages. (Transcript at 951-953; City Ex. 381 at 3.)

Veolia disagrees with the method the City used to adjust the costs for the condition of the lids.  Because the lids were beyond their "expected useful service life," Veolia argues that they had no economic value at the time they collapsed.  The Court disagrees.  The lids were clearly serving a useful function when they collapsed. Although Veolia may disagree with the manner in which the City calculated the adjustment, it did not present sufficient evidence at trial to persuade the Court that the City's method significantly overestimated the value of the lids.  Accordingly, Veolia's request to amend the amount of damages awarded in connection with the collapse of the digester lids is denied.

E.      Interest Calculations and Other Calculations

Finally, Veolia seeks to recover prejudgment interest on the amounts awarded by the Court.  Under Georgia law, "all liquidated demands . . . bear interest from the time the party shall become liable and bound to pay them."  O.C.G.A. § 7-4-15.  The Service Agreement also permits the recovery of prejudgment interest.  Section 20.20 provides:

> Except as otherwise provided herein, all amounts due either Party hereunder, whether as damages, credits, revenue, charges or reimbursements, that are not paid when due shall bear interest at the rate of interest that is the Overdue Rate.

(Joint Ex. 20 § 20.20.)  The Overdue Rate is defined as "the maximum rate of interest permitted by the laws of the State of Georgia, if applicable, or the Prime Rate, whichever is lower."  Id.  "Prime Rate" means the prime rate reported by the <u>Wall Street Journal</u> or some comparable authority.  Id.  The maximum legal rate allowed here is 18% (1.5% per month).  <u>See</u> O.C.G.A. § 7-4-16.  This is higher than the Prime Rate at all relevant times.  Accordingly, the Prime Rate applies.

Veolia submitted interest calculations with its proposed findings.  Because the amount of damages did not match the amount awarded by the Court, the Court did not award any interest.  Veolia has now revised its calculations to match the damages awarded by the Court and moves to amend the judgment to include prejudgment interest on the letter of credit and its unpaid invoices.

1.    <u>Letter of Credit</u>

The City argues that Veolia is not entitled to prejudgment interest on the $9,525,304 letter of credit furnished by Veolia pursuant to § 15.03 of the Service Agreement.  The Agreement permitted the City to draw on the full amount of the letter of credit if it gave Veolia a notice of termination based on an event of default.  But the Agreement also required the City to pay Veolia "the amount wrongfully drawn . . . together with interest thereon at the Overdue Rate calculated from the date of the drawing to the date of payment" if it was "determined by any court of competent jurisdiction in a final non-appealable decision that such drawing to any extent was not permitted."  (Joint Ex. 20 § 15.03.)

The City says that Veolia is not entitled to interest on the letter of credit because the Court's judgment is not a "final non-appealable decision" and because its decision to draw on the letter of credit was not "wrongful."  The City is correct that it does not have to pay interest until there is a final non-appealable judgment.  But that is true of any award, and it does not preclude the Court from awarding interest to be paid upon the entry of a final non-appealable judgment.  The City's second argument also fails. The Court found that the City "wrongfully" drew on the letter of credit when it ordered the City to return the letter of credit to Veolia.  Although the City had the right to draw on the letter of credit when it gave Veolia notice of termination, it did not have the right to keep the  $9,525,304 letter of credit interest-free.

2.    <u>Unpaid Invoices</u>

The City next argues that Veolia is not entitled to prejudgment interest on its unpaid invoices because the City was entitled to withhold the damages awarded by the Court from the invoices.  But the City recovered only for expenses incurred after the termination of the contract - belt press rental fees, odor control chemicals, and lid replacement costs.  The capital improvement work at issue here was completed and invoiced before the termination of the contract.  The City withheld from these invoices on grounds rejected by the Court, such as the alleged cost-savings agreement.

With respect to the operational invoices, the City also argues that Veolia may not recover interest because it failed to show the submittal dates.  However, the submittal dates were shown on the invoices themselves, which Veolia submitted as trial exhibits.  Although the invoices were sometimes submitted late, it appears that Veolia calculated interest based on the actual submittal date.  Accordingly, Veolia is entitled to interest on its unpaid invoices.

3.    <u>Method of Calculation</u>

Finally, the City says that Veolia is not entitled to interest because it improperly applied the Prime Rate.  To calculate the interest, Veolia multiplied the Prime Rate in effect when the obligation became due times the number of days the obligation was outstanding.  According to the City, Veolia should have varied the interest rate with

each fluctuation of the Prime Rate.  Nothing in the Service Agreement suggests that the City's interpretation is correct.  Veolia's method appears to be a more sound method of calculating interest, reflecting the fact that Veolia could have made a fixed-rate investment at a comparable rate if the City had paid the invoices on time. Accordingly, the Court will award interest to Veolia based on the Prime Rate at the time the obligation became due.  Because the City did not move to amend the judgment to include prejudgment interest on its damages, it is not entitled to prejudgment interest.

      F.     <u>Adjusted Damages</u>

      In summary, the judgment is amended to reflect the following damages:

| City of Atlanta's Damages | |
| --- | --- |
| Type of Damages | Amount Awarded |
| Repair of Digester 150 | $593,430.73 |
| Repair of Digester 250 | $518,443.64 |
| D150 Sludge Dewatering Overcharge | $0.00 |
| RM Clayton Polymer System | $0.00 |
| Headhouse Roof | $0.00 |
| Odor Control Chemicals and Synagro Belt Presses at RM Clayton | $9,072,469.16 |
| Variport at South River | $0.00 |
| Synagro Belt Press at South River | $0.00 |

| Double Billing of Centrate at RM Clayton | $0.00 |
|---|---|
| Miscalculation of Gas Usage | $0.00 |
| Salvage Equipment | $0.00 |
| TOTAL | $10,184,343.53 |

| Veolia's Damages | | |
|---|---|---|
| Type of Damages[1] | Amount Awarded | Interest |
| Undisputed Invoices | $1,642,810.52 | $651,329.42 |
| Cost Recovery Deductions | $459,723.90 | $171,444.14 |
| Natural Gas Deductions | $1,536,972.98 | $606,337.45 |
| Headhouse Roof Work | $126,625.02 | $50,227.92 |
| Utoy Creek Flood Damage Work | $59,623 | $23,764.09 |
| Stranded Work | $1,505,907 | $601,287.15 |
| Increased monthly operating costs (8/05 - 7/06) | $0.00 | $0.00 |
| Increased monthly operating costs (1/04-8/05) | $0.00 | $0.00 |
| Digester Allowances | $0.00 | $0.00 |

---

[1]The Court previously awarded $115,114 in accrued interest based on invoices for this amount submitted at trial.  It appears that this amount is included in the interest calculations submitted by Veolia.  Accordingly, the Court no longer recognizes this calculation as a separate category of damages.  In addition, the Court has corrected the mathematical error contained in the June 3, 2011 Opinion and Order.

| Extended Capital Oversight and Management Costs | $264,900 | $103,923.72 |
|---|---|---|
| Letter of Credit | $9,525,304 | $3,804,763.62 |
| TOTAL | $15,121,866.42 | $6,013,077.51 |
| TOTAL WITH INTEREST | $21,134,943.93 | |

The Court will deduct from the net amount the sum of $948,608.82 that the City claims that it would have received in prejudgment interest on the damages awarded to it.

## V.   Conclusion

For the reasons addressed above, the Clerk is directed to enter an amended judgment in favor of Veolia in the total amount of $10,001,991.58.

SO ORDERED, this 26 day of August, 2011.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge